**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:14-CV-00036-JHM**

**PAUL GAGER**                                                                                               **PLAINTIFF**

**V.**

**CINCINNATI INSURANCE COMPANY**                                                        **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Plaintiff Paul Gager's Motion for Partial Summary Judgment [DN 16]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion for Partial Summary Judgment is **DENIED**.

**I. BACKGROUND**

On July 19, 2013, Plaintiff was operating a 2003 Yamaha Zuma YW50 on a public street in Henderson County, Kentucky, when he was struck by an automobile driven by Mary Toerne. (Police Traffic Collision Report [DN 16-4] 1–3.) Plaintiff sustained physical injuries as a result of the accident and as of September 5, 2013, asserts that he has incurred approximately $289.935.49 of medical expenses as a result of those injuries. (<u>See</u> Itemized Medical Bills [DN 16-5].) Plaintiff settled his bodily injury claim for the $50,000.00 limit provided under the insurance contract between Toerne and her insurer, Travelers Home and Marine Insurance Company. (<u>See</u> Compl. [DN 1-2] ¶ 7.)

In this action, originally filed in state court on March 11, 2014, Plaintiff asserts a claim for underinsured motorist (UIM) benefits under an automobile insurance policy (the "Policy")

issued by Defendant Cincinnati Insurance Company to Plaintiff's mother and stepfather, the Funks, with whom Plaintiff resides.[1]  Pursuant to the UIM coverage provided by the Policy:

> "We" [Defendant] will pay compensatory damages which a "covered person" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury" or death:
>
> 1. Sustained by a "covered person"; and
>
> 2. Caused by an accident.
>
> . . . .
>
> "We" [Defendant] will pay under this endorsement if:
>
> 1. The limits of insurance under all applicable bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements; or . . . .

(UIM Endorsement [DN 16-7] 1.)  "Covered persons" as used in the UIM endorsement includes the named insureds—the Funks—and any "family member." (Id.)  "Family member" is defined in the Policy to include relatives living in the same household as the named insured. (Jan. 13, 2014 Letter from Donnie Munsey, Cincinnati Insurance Company, to Paul Gager c/o Moore, Malone and Saafred [DN 16-3] 1–2.)  According to Mrs. Funk's undisputed affidavit, Plaintiff, Mrs. Funk's biological son, was living with her and Mr. Funk at the time of the accident. (See Virginia Funk Aff. [DN 16-8] ¶¶ 2, 4.)

The Policy excludes UIM coverage for bodily injury sustained by any person while operating or occupying a "motor vehicle" owned by a "covered person" if the "motor vehicle" is not specifically identified in the UIM endorsement. (UIM Endorsement [DN 16-7] 2.)  The declarations pages of the Policy identify two vehicles for coverage under the Policy, a 2004 Chevrolet Impala and a 1997 Oldsmobile Eighty Eight. (Auto Declarations [DN 16-7] 2.)  The Yamaha Zuma, which is owned by Plaintiff (see Certificate of Title [DN 16-9]), is not identified

---

[1] In addition to his claim for UIM benefits, Plaintiff also asserts a claim for violation of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230. (Compl. [DN 1-2] ¶¶ 10–22.)  On June 11, 2014, Defendant moved to bifurcate and stay discovery on Plaintiff's extra-contractual claims pending resolution of Plaintiff's contract claim [DN 9].  This Court granted the Motion to Bifurcate and Stay Discovery by Order dated August 14, 2014 [DN 15].

or mentioned in the Policy. It is on this exclusion that Defendant relies in maintaining that Plaintiff is not entitled to UIM benefits, asserting that the Yamaha Zuma is, under Kentucky law, a "motor vehicle" for purposes of the Policy's UIM coverage endorsement.

The Policy defines "motor vehicle," in relevant part, as "[a] self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck and motorcycle," and expressly states that "motor vehicle" does not include a "trolley, streetcar, 'trailer', railroad engine, railroad car, motorized bicycle, golf cart, unless authorized by a local ordinance to be driven on a public roadway, off-road recreational vehicle, snowmobile, forklift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle." (UIM Endorsement [DN 16-7] 1.)

On November 24, 2014, Plaintiff filed this Motion for Partial Summary Judgment on the issue of whether UIM coverage was available to Plaintiff under the facts of this case [DN 16]. Defendant has responded [DN 23], and Plaintiff has replied [DN 26].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In a diversity action, this Court must apply the substantive law of Kentucky "in accordance with the then-controlling decision of [Kentucky's highest court]." Pedigo v. UNUM Life Ins. Co. of Am., 145 F.3d 804, 808 (6th Cir. 1998) (citation and internal quotation marks omitted). Where Kentucky courts have not decided the precise issue at hand, this Court must determine the path that the state would likely follow. Overstreet v. Norden Labs., Inc., 669 F.2d 1286, 1290 (6th Cir. 1982).

### III. DISCUSSION

In the present case, the pertinent facts are undisputed. There is no dispute that Plaintiff meets the requirements for UIM coverage under the Policy. First, Plaintiff is a "covered person" under the Policy, as a resident residing with the named insureds, the Funks. Second, the damages are a result of bodily injuries caused by an accident with Toerne. Third, Toerne's underinsured status necessitated Plaintiff's present claim for UIM benefits. The question then

becomes whether Plaintiff was operating a "motor vehicle," in which case coverage would be excluded.

According to the Policy, a UIM claim is prohibited if all of the following elements are present. First, if the claimant is operating or "occupying" a motor vehicle. Second, if the motor vehicle is owned by a "covered person," or a spouse or a resident relative of a "covered person." Third, if the motor vehicle is not specifically identified in the UIM endorsement. There is no dispute that the Yamaha Zuma was being operated by Plaintiff at the time of the accident; was owned by Plaintiff, a covered person; and was not specifically identified in the UIM endorsement. The issue is whether the Yamaha Zuma is a "motor vehicle" within the meaning of the Policy's UIM exclusion. If it is, then Plaintiff has no UIM coverage in connection with the accident.

The UIM Endorsement provides:

"Motor vehicle" as used in this endorsement means:

1. A self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck and motorcycle.

2. A motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office.

3. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, unless authorized by a local ordinance to be driven on a public roadway, off-road recreational vehicle, snowmobile, forklift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

(UIM Endorsement [DN 16-7] 1.) Plaintiff contends that the Policy is ambiguous as to whether or not the Yamaha Zuma is a motor vehicle under the terms of the Policy. As such, in accordance with Kentucky law, the ambiguity should be construed in favor of Plaintiff, the insured. In the alternative, if the definition is unambiguous as applied to this claim, Plaintiff

5

contends that the Yamaha Zuma is not a motor vehicle under the definition of the term. Defendant contends that the Policy exclusion and motor vehicle definition are not ambiguous as applied to the Yamaha Zuma and that Plaintiff cannot avoid the Policy's clear language, under which, according to Defendant, the Yamaha Zuma is clearly a motor vehicle.

"The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." Hazard Coal Corp. v. Knight, 325 S.W.3d 290, 298 (Ky. 2010) (quoting First Commonwealth Bank of Prestonsburg v. West, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)) (internal quotation marks omitted). An insurance policy is to be liberally construed in favor of coverage; exclusions are to be strictly construed. See Eyler v. Nationwide Mut. Fire Ins. Co., 824 S.W.2d 855, 859–60 (Ky. 1992). "Any limitation on coverage or an exclusion in a policy must be clearly stated in order to apprise the insured of such limitations. Stated otherwise, not only is the exclusion to be carefully expressed, but, as in this case, the operative terms clearly defined." St. Paul Fire & Marine Ins. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223, 227 (Ky. 1994). "In the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear v. P.T.A. Indus., Inc., 103 S.W.3d 99, 106 (Ky. 2003) (footnote and internal quotation marks omitted); Nationwide Mut. Ins. Co. v. Nolan, 10 S.W.3d 129, 131 (Ky. 1999) ("The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning.").

If the relevant insurance policy language is reasonably susceptible to more than one interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous. Powell-Walton-Milward, 870 S.W.2d at 227–28. An ambiguity may

6

appear either on the face of the policy or when a provision is applied to a particular claim. Id. at 227. Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and any reasonable doubt must be resolved in favor of coverage. Id. An ambiguous insurance policy must be construed to protect the reasonable expectations of the insured. See True v. Raines, 99 S.W.3d 439, 443 (Ky. 2003). "[U]nder Kentucky law, where a policy is susceptible to two different interpretations, the interpretation favorable to the insured is adopted." Powell-Walton-Milward, 870 S.W.2d at 225. Coverage for UIM benefits must be found if there is any reasonable interpretation of the insurance policy that would support it—even if the insurer proffers another interpretation that is also reasonable. See id. at 227 ("As long as coverage is available under a reasonable interpretation of an ambiguous clause, the insurer should not escape liability, and the exclusionary provision addressed herein may be subject to more than one good faith interpretation.").

"The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract." Powell-Walton-Milward, 870 S.W.2d at 226. A nonexistent ambiguity should not be utilized to resolve a policy against the insurer. Id. "[C]ourts should not rewrite an insurance contract to enlarge the risk to the insurer." Id. at 226–27.

The question presented here turns on whether the Yamaha Zuma fits the definition of "motor vehicle" as that term is defined under the Policy. Defendant contends that under the clear and unambiguous language of the Policy, the Yamaha Zuma is a motor vehicle. Defendant focuses almost exclusively on part one of the definition. According to Defendant, under the

7

UIM Endorsement definition, all "self-propelled vehicle[s] designed for use and principally used on public roads" are motor vehicles. The Yamaha Zuma is a self-propelled vehicle designed for use and principally used on public roads. (See Yamaha YW50AR Owner's Manual [DN 23-1] 1-2.) Thus, the argument goes, the Yamaha Zuma is a motor vehicle under the Policy definition of the term. Further, Defendant contends that the definition is not ambiguous because "there is nothing ambiguous about describing a vehicle as self-propelled" and "there is no ambiguity in the language defining a motor vehicle as one principally designed for use on public roads and principally used on public roads." (Def.'s Resp. [DN 23] 10.)

Defendant's argument, however, disregards the list of specific exclusions in part three. "[A]n insurance contract must be construed without disregarding or inserting words or clauses." Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869, 875 (Ky. 2002). To determine whether the Yamaha Zuma is within the Policy definition of "motor vehicle," the Court must examine the entire definition, as well as the Policy as a whole. Pizza Magia Int'l, LLC v. Assurance Co. of Am., 447 F. Supp. 2d 766, 770 (W.D. Ky. 2006) ("[T]he Court must look at the policy as a whole and give every provision its full meaning and operative effect.").

Part three of the definition specifically excludes a "motorized bicycle" from its definition of "motor vehicle." However, the Policy does not define the term "motorized bicycle." Where a term is not defined in a contract, the court will afford that term its "ordinary meaning as persons with the ordinary and usual understanding would construe [it]." Transp. Ins. Co. v. Ford, 886 S.W.2d 901, 904 (Ky. Ct. App. 1994) (citation and internal quotation marks omitted). Kentucky courts often refer to dictionaries in order to determine the meaning of undefined contractual terms. See, e.g., Commonwealth v. Whitworth, 74 S.W.3d 695, 700 (Ky. 2002); Weaver v. Nat'l Fid. Ins. Co., 377 S.W.2d 73, 75 (Ky. 1963). Here, however, no dictionary definition of the term

8

"motorized bicycle" has been offered by the parties or found by the Court upon independent research. The Court notes that some states define the term "motorized bicycle" in various ways in their motor vehicle registration, licensing, and insurance laws. See, e.g., Cal. Veh. Code § 406; Mo. Ann. Stat. § 301.010(36); N.J. Stat. Ann. § 39:1-1; Ohio Rev. Code Ann. § 4501.01(L); Tenn. Code Ann. §§ 55-1-103, 55-8-101. Kentucky, however, does not independently define the term "motorized bicycle."

Defendant claims that "the Yamaha [Zuma] clearly is not a 'motorized bicycle.' For something to qualify as a 'motorized bicycle,' it must first be a bicycle." (Def.'s Resp. [DN 23] 12.) Defendant relies on dictionary definitions of the term "bicycle," for its premise that in order for something to be a bicycle, it must have pedals. (See id. (citing Ballantine's Law Dictionary (3d ed. 2010); Life & Cas. Ins. Co. v. King, 71 So. 2d 121, 123 (Ala. Ct. App. 1954) (quoting Encyclopedia Americana Vol. 3)).) Thus, according to Defendant, in order for something to be a motorized bicycle, it must have pedals. "The Yamaha Zuma has no pedals. It therefore is not a bicycle. As it is not a bicycle, it cannot be a motorized bicycle." (Def.'s Resp. [DN 23] 12.)

While that is a reasonable interpretation of the term "motorized bicycle," there is another reasonable interpretation, which would seemingly encompass a Yamaha Zuma. As noted, the Kentucky legislature did not choose to independently define the term "motorized bicycle." However, various Kentucky statutes regulating motor vehicle registration, licensing, and insurance define the term "moped" as a subset of "motorized bicycle," and make clear that a "motorized bicycle" is not strictly limited by a requirement of having pedals. Those statutes provide:

> *"Moped" means* either a motorized bicycle whose frame design may include one (1) or more horizontal crossbars supporting a fuel tank so long as it also has pedals, or *a motorized bicycle with a step-through type frame which may or may not have pedals* rated no more than two (2) brake horsepower, a cylinder capacity

9

> not exceeding fifty (50) cubic centimeters, an automatic transmission not requiring clutching or shifting by the operator after the drive system is engaged, and capable of a maximum speed of not more than thirty (30) miles per hour.

KRS 187.290(5) (Financial Responsibility Law) (emphasis added); KRS 304.39-020(8) (Motor Vehicle Reparation Act); KRS 186.010(5) (Licensing); see KRS 186A.080 (exempting mopeds from registration and title requirements), 186A.345 (terms in this chapter shall be defined as provided by KRS 186.010).  Although the term "moped" is not found in the Policy, a plain reading of this statutory language belies the notion that a motorized bicycle must have pedals. Accordingly, the Court finds that a reasonable interpretation of the term "motorized bicycle" also includes a vehicle with a step-through frame, even though it has no pedals, as long as it is rated at no more than two brake horsepower, has a cylinder capacity not to exceed 50 cc's, has an automatic transmission and is capable of a maximum speed of not more than thirty miles per hour.

Because Defendant's definition of motor vehicle is reasonably susceptible to two different interpretations, the interpretation favorable to the insured's reasonable expectations must be adopted.  Powell-Walton-Milward, 870 S.W.2d at 225, 227.  Under the reasonable interpretation adopted, coverage is available to Plaintiff if the Yamaha Zuma fits all the criteria above.  Plaintiff has presented evidence that the Yamaha Zuma comes within the statutory definition of a "moped."  (See Jerry Sparks Aff. [DN 16-10] ¶¶ 2–4; Pl.'s Aff. [DN 16-11] ¶¶ 2–4; Henderson Circuit Clerk Aff. [DN 16-12] ¶¶ 2–4.)  However, given that the Defendant has not had the opportunity to conduct discovery, the Court is reluctant to find that there are no issues of fact relating to whether the Zuma meets all the criteria, particularly with respect to its maximum speed.  The Plaintiff's Affidavit simply states that he could not get the vehicle to exceed 30 miles per hour.  (See Pl.'s Aff. [DN 16-11] ¶ 4 ("When I rode on the moped, the maximum speed at which I could get it to go is 30 mph.").)  At this point, the Court deems Plaintiff's declaration as

10

insufficient proof to establish that the machine is incapable of speeds in excess of thirty miles per hour. Therefore, discovery is needed.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Paul Gager's Motion for Partial Summary Judgment [DN 16] is **DENIED**.

                                                                Joseph H. McKinley, Jr., Chief Judge
                                                                   United States District Court

                                                                   March 26, 2015

cc: counsel of record